WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Jo Hazelwood, a married woman filing individually,<br><br>Plaintiff,<br><br>v.<br><br>Bank of America NA, a North Carolina corporation,<br><br>Defendant. | No. CV-13-00401-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 27.) For the following reasons, the Motion is granted.

## BACKGROUND

Plaintiff Martha Jo Hazelwood began working as a teller at Defendant Bank of America, N.A., (the "Bank") in 1992 and most recently worked as an Assistant Manager at the Bank's McCormick Ranch location in Scottsdale, Arizona. (Doc. 28 ("DSOF") ¶ 1; Doc. 31 ("PSOF") ¶ 1.) The McCormick Ranch location is managed by a Banking Center Manager who supervises an Assistant Manager, a Teller Operations Supervisor, a Sales and Service Specialist, personal bankers, and tellers. (DSOF ¶ 2; PSOF ¶ 2.) Plaintiff became the Assistant Manager at McCormick Ranch in 2008. (DSOF ¶ 3; PSOF ¶ 3.) Among other duties, this position included "lobby leading," which involves greeting clients and directing them to the appropriate area of the banking center. (*Id.*) The Assistant Manager also has personal banker duties and opens new accounts. (DSOF ¶ 4; PSOF ¶ 4.) During all times relevant to this Motion, Plaintiff's supervisor was Banking

Center Manager Maureen Aaby. (DSOF ¶ 6; PSOF ¶ 6.)

Plaintiff took a leave of absence on October 5, 2010 due to a herniated disc. (DSOF ¶ 12; PSOF ¶ 12.) On November 22, 2010, she was released to return to work by her physician with restrictions that she could not lift over ten pounds and could not sit, stand, or walk for more than one hour at a time. (DSOF ¶ 13; PSOF ¶ 13.) Plaintiff and Aaby discussed how best to accommodate these restrictions. (DSOF ¶ 14; PSOF ¶ 14.) Aaby told Plaintiff that she could use the dedicated accessible teller window as needed. (DSOF ¶ 15; PSOF ¶ 15.) She also assigned Plaintiff a desk on the banking center platform and provided Plaintiff with additional training on tasks she could perform while seated at the platform. (DSOF ¶¶ 18–19; PSOF ¶¶ 18–19.) Plaintiff requested that Aaby also provide her with a stool so that she could sit as needed during her lobby leading duties. (DSOF ¶ 23; PSOF ¶ 23.) Aaby offered Plaintiff a seat she could use, and placed an order for a stool when Plaintiff complained that the initial seat provided was not sufficient. (DSOF ¶¶ 23–26; PSOF ¶¶ 23–26.)

On January 3, 2011, Plaintiff called the Bank's Advice & Counsel Department and stated that she was struggling in her Assistant Manager role. (DSOF ¶ 27; PSOF ¶ 27.) The parties dispute the exact contents of this conversation, but Plaintiff does not dispute that she was told to inform Aaby about her specific need for a chair or stool and encouraged to call Advice & Counsel again if she had further concerns. (DSOF ¶ 29; PSOF ¶ 29.)

At some point in mid-January, 2011, Plaintiff provided Aaby with a note from her physician, dated January 11, 2011, which released Plaintiff to work without restrictions for 30 hours per week. (DSOF ¶ 31; PSOF ¶ 31.) Plaintiff and Aaby discussed the release and agreed that Plaintiff would work six hours per day to accommodate her restriction. (DSOF ¶ 33; PSOF ¶ 33.) On either January 19, 2011, or January 21, 2011, the McCormick Ranch location was subjected to a random audit by the Bank. (DSOF ¶ 35; PSOF ¶ 35.) The location failed the audit and both Plaintiff and Aaby received written warnings. (DSOF ¶ 39; PSOF ¶ 39.)

On January 26, 2011, before the stool that Aaby had ordered had arrived, Plaintiff began a second leave of absence because of her difficulties performing the Assistant Manager position. (DSOF ¶ 26; PSOF ¶ 26.) In February 2011, Plaintiff applied and interviewed for a Teller Operations Supervisor Position at another Bank location in Phoenix. (DSOF ¶ 48; PSOF ¶ 48.) Plaintiff was not chosen for the position. (DSOF ¶ 49; PSOF ¶ 49.) On March 10, 2011, Plaintiff was released by her physician to return to work "as tolerated," with no particular restrictions for standing or sitting. (DSOF ¶ 34; PSOF ¶ 34.) In September 2011, Plaintiff applied and interviewed for a customer support position at the Bank and was not selected for the job. (DSOF ¶¶ 54–55; PSOF ¶¶ 54–55.) In October 2011, Plaintiff applied for a position in non-fraud ATM and for a position as a fraud analyst II. (DSOF ¶ 59; PSOF ¶ 59.) She was not selected for either position. On an unspecified date, Plaintiff also applied for a Team Leader position in Customer support, but did not receive an interview. (DSOF ¶ 57; PSOF ¶ 57.)

On November 2, 2011, Plaintiff provided Aaby with another note, restricting her to no more than one hour of standing at a time, and no more than four hours standing daily, due to a heel spur. (DSOF ¶ 63; PSOF ¶ 63.) The Bank alleges that Plaintiff was already permitted to sit and stand as needed and that she did not request additional accommodations. (DSOF ¶ 64.) Plaintiff asserts that she was not allowed to sit and stand as needed and that she requested the same accommodations she had requested previously, but was never given. (PSOF ¶ 64.)

On November 28, 2011, Plaintiff took a third leave of absence and remained on leave at the time this Motion was filed. (DSOF ¶ 66; PSOF ¶ 66.) On March 26, 2012, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against by the Bank because of her disability by not being provided a stool and by being denied transfers to other positions. (DSOF ¶ 67; PSOF ¶ 67.) Plaintiff later testified that the statement she had never received a stool was untrue, but she asserts that "the context of the charge was that she did not receive an adequate stool." (DSOF ¶ 69; PSOF ¶ 69.) Plaintiff stated the only

1 time she was not allowed to work her 30-hour work week during the period of that
2 restriction was on the day of the random audit when she was either asked to or instructed
3 to stay later. (DSOF ¶¶ 74–75; PSOF ¶¶ 74–75.) Plaintiff also admitted that she was
4 never actually denied the ability to sit as needed (DSOF ¶ 73), but instead claims she was
5 encouraged to stand "once her hour was up until she could 'get these things done'"
6 (PSOF ¶ 73). On July 31, 2012, the EEOC issued its determination and right to sue
7 notice. (DSOF ¶ 78, PSOF ¶ 78.)

8 On October 29, 2012, Plaintiff filed the present action against Defendant in
9 Maricopa County Superior Court. (Doc. 1-3 at 2.) Her Complaint alleges disability
10 discrimination under the Americans with Disabilities Act ("ADA"). (Doc. 1-3 ¶ 30.) On
11 February 26, 2013, Defendant removed the action to this Court. (Doc. 1.) Defendant now
12 moves for summary judgment, alleging that some of Plaintiff's claims are barred by the
13 statute of limitations and that her remaining claims fail as a matter of law. (Doc. 27.)

## DISCUSSION

### I. Legal Standard

16 Summary judgment is appropriate if the evidence, viewed in the light most
17 favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to
18 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.
19 P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of
20 informing the district court of the basis for its motion, and identifying those portions of
21 [the record] which it believes demonstrate the absence of a genuine issue of material
22 fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

23 Substantive law determines which facts are material and "[o]nly disputes over
24 facts that might affect the outcome of the suit under the governing law will properly
25 preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
26 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could
27 return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
28 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving

1  party must show that the genuine factual issues "'can be resolved only by a finder of fact
2  because they may reasonably be resolved in favor of either party.'" *Cal. Architectural*
3  *Bldg. Prods., Inc. v. Franciscan Ceramics*, *Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987)
4  (quoting *Anderson*, 477 U.S. at 250). Because "[c]redibility determinations, the weighing
5  of the evidence, and the drawing of legitimate inferences from the facts are jury
6  functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and
7  all justifiable inferences are to be drawn in his favor" at the summary judgment stage.
8  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59
9  (1970)). Furthermore, the party opposing summary judgment "may not rest upon the
10 mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts
11 showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec.*
12 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose*
13 *Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

**II.    Claims Occurring Before May 31, 2011**

A Plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. 29 C.F.R. § 1601.13(a)(4)(ii)(A). A Plaintiff may not recover for discrete acts of discrimination that occurred before this 300-day statutory period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Discrete acts include termination, failure to promote, denial of transfer, or refusal to hire. *Id.* at 114. The limitations period for challenging these acts begins to run on the date the act occurred. *Id.*

Plaintiff filed her charge of discrimination with the EEOC on March 26, 2012 and is thus precluded from asserting claims regarding conduct that occurred before May 31, 2011, 300 days earlier. Plaintiff argues that the Court may still consider this otherwise time-barred conduct under a theory of continuing violations. (Doc. 30 at 4.) However, such a theory is only available to a Plaintiff asserting a hostile work environment claim, which by its "very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. Here, Plaintiff alleges no such claims, and thus the Court may only consider her pre-May 31, 2011 allegations "as background evidence in support of a timely claim." *Id.* at 113.

1  Defendant is entitled to summary judgment regarding Plaintiff's claims that occurred
2  prior to May 31, 2011.

### III. Claims Occurring After May 31, 2011

In addition to her time-barred claims, Plaintiff timely alleges discrimination based on events that occurred after May 31, 2011. These include claims that the bank failed to hire her for three positions in September 2011 and October 2011 and a claim that the Bank failed to reasonably accommodate her disability after she gave Aaby the November 2, 2011 note restricting her to standing for no more than one hour at a time and four hours total during the workday.

#### A. Failure to Hire Claims

To establish a *prima facie* case of disability discrimination under the ADA at the summary judgment stage, a Plaintiff must set forth facts from which a jury could find that she: (1) has a disability; (2) was qualified for the job she sought; and (3) was subject to an adverse employment action because of her disability. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002). For the purposes of this Motion, the Bank has assumed that Plaintiff has a disability. (Doc. 27 at 10.) Thus, Plaintiff must set forth facts from which a reasonable jury could conclude that she has met the second and third prong of the *prima facie* case. Plaintiff alleges that the Bank discriminated against her by failing to hire her for the customer support position in September 2011 and for non-fraud ATM and fraud analyst II positions in October 2011.

Under the second prong, the Bank notes that the Plaintiff had never worked outside of the retail banking department. The Bank argues that because all of the three positions she sought after May 31, 2011 were outside of retail banking, Plaintiff had no experience in any of the positions. (Doc. 27 at 10.) Plaintiff does not dispute this, but alleges that she had enough general experience at the Bank to be qualified. (Doc. 30 at 6.) She also notes that recruiters at the Bank encouraged her to apply for the positions. (*Id.*) Taking these facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff was qualified for these positions.

1     Under the third prong, Plaintiff provides no evidence to suggest that she did not
2  receive any of these positions because of her disability. She admits that she does not
3  know the qualifications of the candidates who received the positions or whether any of
4  them had impairments. She does not assert that her disability was ever discussed when
5  interviewing for the jobs or otherwise put forth any other facts to link the employment
6  decisions with her impairment. Thus, a jury could not find that she was not selected for
7  these positions because of her disability.

8     However, even if the Court were to find that Plaintiff has met her burden to set
9  forth facts to establish her *prima facie* case, her failure to hire claims still fail as a matter
10 of law. Once an Plaintiff has met her burden to set forth her *prima facie* case, the burden
11 shifts to the employer to articulate a legitimate, non-discriminatory reason for failing to
12 hire Plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The Bank
13 asserts that it hired candidates other than Plaintiff for these three positions because they
14 had more relevant experience, while Plaintiff had no experience outside of retail banking.
15 (Doc. 27 at 11–12.) Plaintiff does not dispute that this is the case.

16     As Defendant has offered a legitimate, non-discriminatory reason for its decision
17 to hire other candidates instead of Plaintiff, the burden shifts back to Plaintiff to put forth
18 facts that demonstrate that Defendant's stated reason is pretext. *Coghlan v. Am. Seafoods*
19 *Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005). To meet this burden, Plaintiff may use
20 either direct or circumstantial evidence. *Id.* at 1094–95. "Direct evidence is evidence
21 'which, if believed, proves the fact [of discriminatory animus] without inference or
22 presumption.'" *Id.* at 1095 (citations omitted).  Here, Plaintiff offers no such direct
23 evidence.

24     Plaintiff may also meet her burden through circumstantial evidence. This can
25 either take the form of statistical evidence that demonstrates bias or can be evidence that
26 shows "that the employer's proffered reason for the adverse action is 'unworthy of
27 credence.'" *Id.* Plaintiff offers no statistical evidence, but does dispute the legitimacy of
28 the Bank's claims. She asserts that the Bank's proffered reason is not legitimate because

1  she had many years of experience working at the Bank, was encouraged to apply for
2  some of the positions, and because the positions did not necessarily require specialized
3  skills. (Doc. 30 at 5–6.) However, these statements only address the question of whether
4  Plaintiff was qualified for the jobs and not whether, as the Bank alleges, the candidates
5  selected were more qualified. Thus, she also fails to offer circumstantial evidence that
6  demonstrates the Defendant's proffered reason is a pretext for discrimination.

7  Therefore, even if Plaintiff has offered enough facts such that a jury could
8  determine she has established her *prima facie* case, she has offered no evidence to
9  actually show that the Bank's assertion that it opted to hire more qualified candidates was
10 pretext for disability discrimination. Defendant is entitled to summary judgment on
11 Plaintiff's failure to hire claims.

### B.   Reasonable Accommodation Claim

Next, Plaintiff argues that the Bank failed to provide her with reasonable accommodations after she gave Aaby the November 2, 2011 note stating that she was not able to stand for more than one hour at a time, and for more than four hours daily, due to a heel spur. The ADA requires that covered employers provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (citation omitted). An employer, however, need not "provide an employee the accommodation [s]he requests or prefers"; instead, "the employer need only provide some reasonable accommodation," *Zivkovic,* 302 F.3d at 1089, that "enable[s] the employee to perform the duties of the position." *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1115 (9th Cir. 2000), *vacated in part on other grounds by,* 535 U.S. 391 (2002).

1  Here, Plaintiff requested the ability to sit during some of her lobby leading duties. She asked that the Bank provide her with a stool and does not dispute that the Bank did so. She does claim she was dissatisfied with the stool. (PSOF ¶ 84.) She also disputes the Bank's claim that she was permitted to sit and stand as needed to meet her medical restrictions during the workday, but she does not allege a single instance when she was unable to do so. Instead, she claims that "Aaby did not allow Plaintiff to sit as required making her wait once her hour [of sitting] was up until she could get 'these things done first.'" (PSOF ¶ 73.)

Plaintiff characterizes this as a failure to accommodate her restrictions, but she does not dispute that as of November 2, 2011, her restrictions did not require she be able to sit for longer than an hour at a time. Instead, the restrictions only limited her to standing for no more than one hour at a time and for no more than four hours a day. (PSOF ¶ 63.) Thus, even if Aaby did ask Plaintiff to do some standing tasks after she had been seated for an hour, Plaintiff has not asserted facts from which a jury could conclude that Aaby and the Bank failed to accommodate Plaintiff's standing restrictions. Defendant is entitled to summary judgment on Plaintiff's reasonable accommodations claim.

## CONCLUSION

Plaintiff's claims arising from events that occurred prior to May 31, 2011 are barred by the statute of limitations. Further, her timely failure to hire and reasonable accommodations claims fail as a matter of law. Therefore,

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1 **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 27) is
2 **granted**. The Clerk of Court is directed to **terminate this action** and enter judgment
3 accordingly.

4 Dated this 25th day of June, 2014.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge